# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LAVONA STAFFORD, Individually and for Others Similarly Situated, | Case No. 4:24-cv-690 |
| v. | Jury Trial Demanded |
| ELDERCARE MANAGEMENT SERVICES, INC. d/b/a STONEBRIDGE SENIOR LIVING. | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Lavona Stafford (Stafford) brings this collective action to recover unpaid overtime wages and other damages from Eldercare Management Services, Inc. d/b/a StoneBridge Senior Living (StoneBridge).

2. StoneBridge employed Stafford as one of its Patient Care Employees (defined below) at its senior living facility in Jefferson City, Missouri.

3. StoneBridge paid Stafford and its other Patient Care Employees on an hourly basis.

4. Stafford and the other Patient Care Employees regularly worked more than 40 hours a week.

5. But StoneBridge did not pay Stafford and its other Patient Care Employees for all their hours worked.

6. Instead, StoneBridge automatically deducted 30 minutes a day from Stafford's and its other Patient Care Employees' recorded work time for so-called "meal breaks," regardless of whether they actually received a *bona fide* meal break (StoneBridge's "auto-deduct policy").

7. Thus, StoneBridge did not pay Stafford and the other Patient Care Employees for that time.

8. But Stafford and the other Patient Care Employees did not actually receive *bona fide* meal breaks.

9. Instead, StoneBridge required Stafford and its other Patient Care Employees to remain on-duty and perform compensable work throughout their shifts, and StoneBridge continuously subjected them to work interruptions during their unpaid "meal breaks."

10. StoneBridge's uniform auto-deduct policy violates the Fair Labor Standards Act (FLSA) by depriving Stafford and the other Patient Care Employees of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has general personal jurisdiction over StoneBridge because StoneBridge is a domestic corporation.

13. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

14. Specifically, StoneBridge is headquartered in this District and Division.

## PARTIES

15. Stafford worked for StoneBridge as an RN in Jefferson City, Missouri from approximately October 2019 until April 2024.

16. Throughout her employment, StoneBridge classified Stafford as non-exempt and paid her on an hourly basis.

17. Throughout her employment, StoneBridge subjected Stafford to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

2

18. But throughout her employment, Stafford did not actually receive bona fide meal breaks.

19. Stafford's written consent is attached as **Exhibit A**.

20. Stafford brings this collective action on behalf of herself and other similarly situated hourly, non-exempt StoneBridge patient care employees who were subject to StoneBridge's auto-deduct policy.

21. StoneBridge automatically deducts 30 minutes a day from each of these patient care employees' recorded work time for so-called "meal breaks."

22. But these patient care employees do not actually receive *bona fide* meal breaks.

23. Thus, StoneBridge uniformly deprives these patient care employees of overtime wages for all overtime hours worked in willful violation of the FLSA.

24. The putative collective of similarly situated employees is defined as:

**All hourly, non-exempt StoneBridge employees who received a meal period deduction at any time during the past 3 years (the "Patient Care Employees").**

25. StoneBridge is a Missouri corporation headquartered in Saint Charles, Missouri.

26. StoneBridge may be served through its registered agent: **Carl C. Lang, 7733 Forsyth Blvd., Fourth Floor, St. Louis, MO 63105**.

## FLSA Coverage

27. At all relevant times, StoneBridge was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

28. At all relevant times, StoneBridge was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

29. At all relevant times, StoneBridge was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because StoneBridge, had employees engaged in commerce or in the production of goods

for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

30. At all relevant times, StoneBridge has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

31. At all relevant times, Stafford and the Patient Care Employees were StoneBridge's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

32. At all relevant times, Stafford and the Patient Care Employees were engaged in commerce or in the production of goods for commerce.

33. StoneBridge uniformly deducted 30 minutes a day from Stafford's and the other Patient Care Employees' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

34. As a result, StoneBridge failed to pay Stafford and the other Patient Care Employees wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

35. StoneBridge's auto-deduct policy, therefore, violates the FLSA by depriving Stafford and the other Patient Care Employees of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

36. As a result, StoneBridge failed to pay Stafford and the other Patient Care Employees wages (including overtime) for the compensable work they performed at the beginning and end of their shifts.

## FACTS

37. StoneBridge is a senior living community that provides memory care, rehabilitation care, assisted living and skilled nursing services for patients across Arkansas, Illinois, and Missouri.[1]

38. To meet its business objectives, StoneBridge hires healthcare workers, like Stafford and the other Patient Care Employees, to work in its assisted living facilities.

39. StoneBridge uniformly classifies these employees (including Stafford and its other Patient Care Employees) as non-exempt and pays them on an hourly basis.

40. While exact job titles and precise job duties may differ, Stafford and the other Patient Care Employees are all subject to StoneBridge's same or similar illegal policies—StoneBridge's auto-deduct policy—for similar work.

41. For example, Stafford worked for StoneBridge as an RN in Jefferson City, Missouri from approximately October 2019 until April 2024.

42. As an RN, Stafford's primary responsibilities included providing direct patient care, such as monitoring patients, checking vital signs, charting treatments, preparing patients for surgery, sterilizing surgical tools and equipment, responding to emergencies, and generally assisting doctors and other nursing staff in accordance with StoneBridge's uniform policies, procedures, standards, and code of conduct.

43. Throughout her employment, StoneBridge classified Stafford as non-exempt and paid her on an hourly basis.

44. Indeed, StoneBridge agreed to pay Stafford approximately $29.87 an hour for her first 40 hours worked plus overtime for her hours worked over 40 in a workweek.

45. Throughout her employment, StoneBridge required Stafford to report her hours worked to StoneBridge.

46. Thus, StoneBridge records reflect the hours Stafford worked each workweek.

---

[1] *See* https://stonebridgeseniorliving.com/ (last accessed May 15, 2024).

5

47. Indeed, throughout her employment, Stafford typically worked 12-hour shifts for at least 4 days a workweek (or 48+ hours a workweek).

48. But throughout her employment, StoneBridge did not pay Stafford for all her hours worked.

49. Instead, throughout her employment, StoneBridge subjected Stafford to its uniform, illegal auto-deduct policy.

50. Specifically, StoneBridge automatically deducted 30 minutes a day from Stafford's recorded work time for so-called "meal breaks" regardless of whether she actually received a *bona fide* meal break.

51. Thus, StoneBridge did not pay Stafford for that time.

52. But throughout her employment, Stafford did not actually receive *bona fide* meal breaks.

53. Instead, Stafford was forced to regularly perform compensable work throughout her shifts (including during her so-called "meal breaks").

54. Thus, as a result of its illegal auto-deduct policy, StoneBridge failed to pay Stafford overtime wages for all her overtime hours worked in willful violation of the FLSA.

55. Stafford and the other Patient Care Employees perform their jobs under StoneBridge's supervision and use materials, equipment, and technology StoneBridge approves and supplies.

56. StoneBridge requires Stafford and its other Patient Care Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

57. At the end of each pay period, Stafford and the other Patient Care Employees receive wages from StoneBridge that are determined by common systems and methods that StoneBridge selects and controls.

58. StoneBridge requires Stafford and its other Patient Care Employees to record their hours worked using StoneBridge's uniform timeclock system.

59. Thus, just as StoneBridge's records reflect the number of hours Stafford worked each workweek, StoneBridge also has records of the number of hours the Patient Care Employees worked each workweek.

60. But, like Stafford, StoneBridge fails to pay its other Patient Care Employees for all their hours worked.

61. Indeed, StoneBridge uniformly subjects its Patient Care Employees to the same illegal auto-deduct policy it imposed on Stafford.

62. Specifically, just as with Stafford, StoneBridge automatically deducts 30 minutes a day from its other Patient Care Employees' recorded work time for so-called "meal breaks."

63. StoneBridge automatically deducts this time regardless of whether Stafford and the other Patient Care Employees actually receive full, uninterrupted, 30-minute meal breaks.

64. StoneBridge simply assumes Stafford and its other Patient Care Employees receive *bona fide* meal breaks each shift they work.

65. But, like Stafford, the other Patient Care Employees do not actually receive *bona fide* meal breaks.

66. Instead, like Stafford, StoneBridge requires its other Patient Care Employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

67. And, like Stafford, StoneBridge continuously subjects its other Patient Care Employees to work interruptions during their unpaid "meal breaks."

68. Because of these constant work interruptions, Stafford and the other Patient Care Employees are not free to engage in personal activities during their unpaid "meal breaks."

7

69. In other words, Stafford and the other Patient Care Employees are not relieved of all their patient care duties during their unpaid "meal breaks."

70. Rather, during their unpaid "meal breaks," Stafford and the other Patient Care Employees are forced to remain on-duty and perform their regular patient care duties and responsibilities.

71. Thus, Stafford and the other Patient Care Employees routinely spend their unpaid "meal breaks" performing work for StoneBridge's—not their own—predominant benefit.

72. This unpaid time is compensable under the FLSA because StoneBridge knew, or should have known: (1) Stafford and its other Patient Care Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal period; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely skipped their meal periods due to work demands; (5) their unpaid meal periods were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal periods because of constant work interruptions; (7) they remained on StoneBridge's premises or under StoneBridge's supervision during their unpaid meal periods; and/or (8) they spent their unpaid meal periods performing their regular patient care duties for StoneBridge's predominant benefit.

73. StoneBridge fails to exercise its duty as Stafford's and the other Patient Care Employees' employer to ensure these employees are not performing work that StoneBridge does not want performed during their unpaid "meal breaks."

74. And StoneBridge knows, should know, or recklessly disregards whether Stafford and its other Patient Care Employees routinely perform work "off the clock" during their unpaid meal breaks.

75. Indeed, Stafford and other Patient Care Employees complained to their supervisors, HR, and/or StoneBridge management about being forced to work during their unpaid "meal breaks."

76. Thus, StoneBridge requested, suffered, permitted, or allowed Stafford and its other Patient Care Employees to work during their unpaid "meal breaks."

77. Despite accepting the benefits, StoneBridge does not pay Stafford and its other Patient Care Employees for the compensable work they perform during their automatically deducted "meal breaks."

78. Thus, under StoneBridge's uniform, illegal auto-deduct policy, Stafford and the other Patient Care Employees are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in willful violation of the FLSA.

79. Like Stafford, each Patient Care Employee worked more than 40 hours in at least one workweek during the relevant period.

80. Indeed, like Stafford, the other Patient Care Employees typically work 12-hour shifts for at least 4 days a workweek (or 48+ hours a workweek).

81. And Stafford and the other Patient Care Employees were also regularly required to work "off the clock" during their unpaid "meal breaks" to complete their patient care duties and responsibilities for StoneBridge's predominate benefit.

82. As a result, Stafford and the other Patient Care Employees routinely worked more than 40 hours in a typical workweek throughout the relevant period.

83. When Stafford and the other Patient Care Employees worked more than 40 hours in a workweek, StoneBridge did not pay them overtime wages for all overtime hours worked because StoneBridge failed to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek.

**COLLECTIVE ACTION ALLEGATIONS**

84. Stafford incorporates all other paragraphs by reference.

85. Like Stafford, the other Patient Care Employees were victimized by StoneBridge's auto-deduct policy.

86. Other Patient Care Employees worked with Stafford and indicated they were paid in the same manner, performed similar work, and were subject to StoneBridge's same illegal auto-deduct policy.

87. Based on her experience with StoneBridge, Stafford is aware StoneBridge's illegal auto-deduct policy was imposed on the other Patient Care Employees.

88. The Patient Care Employees are similarly situated in the most relevant respects.

89. Even if their precise job duties might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages for all hours worked over 40 in a workweek.

90. Therefore, the specific job titles of the various Patient Care Employees do not prevent collective treatment.

91. Rather, the putative collective is held together by StoneBridge's uniform, illegal auto-deduct policy, which systematically deprived Stafford and the Patient Care Employees of overtime wages for all hours worked after 40 hours in a workweek.

92. StoneBridge's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Patient Care Employees.

93. StoneBridge's records reflect the number of hours the Patient Care Employees recorded they worked each week.

94. StoneBridge's records further reflect it deducted 30 minutes a day from the Patient Care Employees' recorded work time for so-called "meal breaks."

95. Likewise, StoneBridge's records show the specific times the Patient Care Employees clocked in and out for their shifts.

96. The back wages owed to Stafford and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

97. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to StoneBridge's records, and there is no detraction from the common nucleus of liability facts.

98. Therefore, the issue of damages does not preclude collective treatment.

99. Stafford's experiences are therefore typical of the experiences of the Patient Care Employees.

100. Stafford has no interest contrary to, or in conflict with, the Patient Care Employees.

101. Like each Patient Care Employee, Stafford has an interest in obtaining the unpaid wages owed to them under federal law.

102. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

103. Absent this collective action, many Patient Care Employees likely will not obtain redress for their injuries, and StoneBridge will reap the unjust benefits of violating the FLSA.

104. Further, even if some of the Patient Care Employees could afford individual litigation against StoneBridge, it would be unduly burdensome to the judicial system.

105. Indeed, the multiplicity of actions would create a hardship to the Patient Care Employees, the Court, and StoneBridge.

106. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

107. Stafford knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

108. As part of its regular business practices, StoneBridge intentionally, willfully, and repeatedly violated the FLSA with respect to Stafford and the Patient Care Employees.

109. There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

110. The similarly situated Patient Care Employees are known to StoneBridge, are readily identifiable, and can be located through StoneBridge's business and personnel records.

### STONEBRIDGE'S FLSA VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA

111. Stafford incorporates all other paragraphs by reference.

112. StoneBridge knew it was subject to the FLSA's overtime provisions.

113. StoneBridge knew the FLSA required it to pay non-exempt employees, including Stafford and the other Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

114. StoneBridge knew Stafford and the other Patient Care Employees were non-exempt employees entitled to overtime pay.

115. StoneBridge knew it paid Stafford and the other Patient Care Employees on an hourly basis.

116. StoneBridge knew Stafford and the other Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because StoneBridge required these employees to record their hours worked using its timeclock system.

117. StoneBridge knew the FLSA required it to pay employees, including Stafford and the other Patient Care Employees, for all hours they performed compensable work.

118. StoneBridge knew that, as Stafford's and the other Patient Care Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that StoneBridge did not want performed.

119. StoneBridge knew it failed to provide Stafford and the other Patient Care Employees with *bona fide*, uninterrupted meal breaks.

120. StoneBridge knew Stafford and the other Patient Care Employees did not actually receive *bona fide*, uninterrupted meal breaks.

121. StoneBridge knew Stafford and the other Patient Care Employees regularly worked during their unpaid "meal breaks."

122. StoneBridge knew Stafford and the other Patient Care Employees regularly spent their unpaid "meal breaks" performing their regular patient care job duties for StoneBridge's predominant benefit.

123. Indeed, Stafford and the other Patient Care Employees complained to StoneBridge's management, HR, and/or their supervisors about being forced to work during their unpaid "meal breaks."

124. Thus, StoneBridge knew it requested, suffered, permitted, or allowed Stafford and the other Patient Care Employees to work during their unpaid "meal breaks."

125. In other words, StoneBridge knew, should have known, or recklessly disregarded whether Stafford and the other Patient Care Employees performed compensable work during their unpaid "meal breaks."

126. Nonetheless, StoneBridge automatically deducted 30 minutes a day from Stafford's and the other Patient Care Employees' recorded work time for "meal breaks."

127. In other words, StoneBridge knew, should have known, or recklessly disregarded whether it did not pay Stafford and the other Patient Care Employees for all the hours they performed compensable work.

128. StoneBridge's decision to automatically deduct 30 minutes a day from Stafford's and the other Patient Care Employees' recorded work time for meal breaks was neither reasonable, nor was it made in good faith.

129. StoneBridge's failure to pay Stafford and the other Patient Care Employees overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

130. StoneBridge knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Stafford and the other Patient Care Employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

131. StoneBridge knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

132. Stafford incorporates all other paragraphs by reference.

133. Stafford brings her FLSA claim on behalf of herself and the other Patient Care Employees pursuant to 29 U.S.C. § 216(b).

134. StoneBridge violated, and is violating, the FLSA by employing non-exempt employees (Stafford and the other Patient Care Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks and/or at the beginning and end of their shifts.

135. StoneBridge's unlawful conduct harmed Stafford and the other Patient Care Employees by depriving them of the overtime wages they are owed.

136. Accordingly, StoneBridge owes Stafford and the other Patient Care Employees the difference between the overtime wages actually paid and the proper overtime wages actually earned.

137. Because StoneBridge knew, or showed reckless disregard for whether, its policies violated the FLSA, StoneBridge owes these wages for at least the past 3 years.

138. StoneBridge is also liable to Stafford and the other Patient Care Employees for an additional amount equal to all unpaid wages as liquidated damages.

139. Finally, Stafford and the other Patient Care Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

140. Stafford demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Stafford, individually and on behalf of the other Patient Care Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice to the Patient Care Employees allowing them to join this action by filing a written notice of consent;

    b. An Order finding StoneBridge liable to Stafford and the other Patient Care Employees for unpaid overtime wages, plus liquidated damages in amount equal to their unpaid wages;

    c. A Judgment awarding Stafford and the other Patient Care Employees all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

      d.  An Order awarding attorneys' fees, costs, and expenses;

      e.  Pre- and post-judgment interest at the highest applicable rates; and

      f.  Such other and further relief as may be necessary and appropriate.

Date: May 17, 2024.                      Respectfully submitted,

*/s/ Carl A. Fitz*
**Carl A. Fitz**
Cal. Bar No. 350576
Tex. Bar No. 24105863
**FITZ LAW PLLC**
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
(713) 766-4000
carl@fitz.legal